UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 18-197 (PAM/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Detloff Marketing and Asset Management, Inc., Jeffery J. Detloff, and Lori K. Detloff, | |
| Defendants. | |

This matter is before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Hildy Bowbeer. (Docket No. 77.) The R&R recommends denying Defendant Jeffery Detloff's Motions to Suppress (Docket Nos. 42 and 43), and Defendant Detloff Marketing and Asset Management's Motion to Suppress (Docket No. 54). Defendants filed timely objections to the R&R. (Docket Nos. 78, 79.)

The Court must conduct a de novo review of any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo review, and for the reasons set forth below, the Court overrules Defendants' objections and adopts the R&R.

**BACKGROUND**

The full factual background of this matter is set forth in the R&R and need not be repeated here. In short, the Detloffs and Detloff Marketing and Asset Management ("DMAM") are suspected of engaging in a scheme to defraud various financial

institutions by submitting false bids and invoices and by soliciting/receiving kickbacks. On June 10, 2015, FBI Agent Jonathan Holden and Assistant United States Attorney ("AUSA") Andrew Rosa questioned Jeffery Detloff in his office at DMAM's facility while agents conducted a search of the building. Detloff challenges the constitutionality of his questioning. Both Detloff and DMAM challenge the constitutionality of: (1) the search warrants; (2) the May 2015 search of Detloff's trash as part of the FBI's investigation; and (3) the search of a storage area within DMAM's facility.

**DISCUSSION**

A.  **Constitutionality of Questioning**

Detloff argues that his statements during questioning should be suppressed because he was subjected to a custodial interrogation and was not given a Miranda warning.

"Miranda . . . requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued prior to questioning whenever a suspect is (1) interrogated (2) while in custody." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990) (emphasis omitted). The Court must therefore determine whether Detloff was in custody while federal agents were questioning him in his office at DMAM's facility. "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." Id. (emphases omitted). But not all interactions with law enforcement rise to the level of custody; only if the individual reasonably believes that his "freedom of action ha[s] been curtailed to a 'degree associated with formal arrest'" is he in custody

for purposes of Miranda.  Id. (quoting California v. Beheler, 462 U.S. 1121, 1125 (1983)).

To determine whether Detloff was in custody, Griffin suggests consideration of the following factors:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Id. at 1349.

As discussed below, these factors indicate that Detloff was not in custody during his questioning.

### 1. Voluntary Questioning and Freedom to Leave

Agent Holden and AUSA Rosa were present during Detloff's interview.  Detloff alleges that because Holden and Rosa cannot recall whether they informed Detloff that the interview was voluntary, this factor weighs "substantially in favor of suppression." (Docket No. 78 at 10.)  However, even if the agents failed to inform Detloff that questioning was voluntary and he was free to leave, "'the opposite inference'—that a suspect not being told he is free to leave during police questioning is a strong indication he was in custody—does not necessarily follow, because 'the touchstone of our inquiry remains whether [the suspect] was restrained as though he were under formal arrest.'"

3

United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016); (quoting United States v. Lowen, 647 F.3d 863, 868 (8th Cir. 2011)).  As stated in the R&R, there is no evidence in the record that Detloff was restrained in any way or that he was denied freedom of movement or action.  Additionally, Agent Holden testified that Detloff was free to terminate the interview or leave the room at any time. (Tr. (Docket No. 72) at 30-31.) The R&R correctly determined that this factor weighs minimally in the custody analysis.

### 2. Unrestrained Freedom of Movement

Similarly, there is no evidence that Detloff was restrained in any way during the interview.  Detloff points to the fact that he was escorted by an agent during the search of DMAM's facility.  But the questioning started before the search of DMAM's facility, and the agent only escorted Detloff after the questioning ended.  (Tr. at 32, 56.)  Whether Detloff's movement was restrained during execution of the search warrant is not relevant to whether he was in custody during his interrogation.  Detloff's objections on this point are without merit and this factor weighs in favor of a finding that Detloff was not in custody.

### 3. Voluntary Acquiescence to Questioning

The Eighth Circuit "has frequently found custody lacking where suspects take the initiative to offer statements or voluntarily arrange for questioning." Griffin, 922 F.2d at 1351.  When Agent Holden approached Detloff in the DMAM facility parking lot, Detloff agreed to an interview of his own volition.  (Tr. at 21.)  Detloff also suggested that the interview take place in his personal office on the premises.  (Id. at 24.)  Detloff

was calm, businesslike, and responsive to questioning throughout the interview. (Id. at 69-70.) This factor weighs heavily in favor of finding that Detloff was not in custody.

### 4. Strong-Arm Tactics

Detloff concedes that this factor weighs "minimally" in this matter, although he argues that Agent Holden used strong-arm tactics when he informed Detloff that it was a crime to lie to a federal agent. (Docket No. 78 at 12.) Strong-arm tactics include:

> [C]onfronting suspects with false or misleading witness statements, repeatedly lying to the suspect, [] employing a good cop-bad cop routine, . . . separating the suspect from nearby friends or family to deprive the suspect of outside support, utilizing persistent and relentless questioning, giving false legal advice to attempt to trick the suspect into confessing to a crime, or manipulating the suspect's insecurities about his or her surroundings.

United States v. Peterson, No. 14cv328, 2015 WL 1585507, at *7 (D. Minn. April 2, 2015) (Tunheim, J.) Detloff has cited no legal authority to support his argument[1] and there is no evidence that any of the Peterson examples of strong-arm tactics occurred. The Court agrees with the R&R's analysis of this factor and finds that no strong-arm tactics were used during Detloff's questioning.

### 5. Police-Dominated Atmosphere

When analyzing this factor, "[t]he question is whether the entire context of the questioning, including such considerations as place and length of the interrogation, demonstrates that the course of the investigation was police dominated." Griffin, 922 F.2d at 1352. Where the police "'dictate the course of conduct followed by the [suspect]'" or their conduct "leads a suspect to believe that the police have taken full

---

[1] Detloff's citation to Jenner v. Smith, 982 F.2d 329 (8th Cir. 1993) is inapposite.

control of the scene," the existence of custody is more likely. Id. (quoting United States v. Jones, 630 F.2d 613, 616 (8th Cir. 1980)). Notably, the Eighth Circuit has declined to find that an atmosphere is police-dominated when the questioning occurs at the suspect's workplace, because it is a location where the suspect "would be comfortable and less threatened." United States v. Wallace, 323 F.3d 1109, 1113 (8th Cir. 2003).

Detloff again objects based on the atmosphere during the execution of the search warrant rather than the atmosphere during questioning, arguing that because there were five to seven agents present in the building during the search, law enforcement had taken full control of the scene. (Docket No. 78 at 13.) However, the number of agents executing the search warrant is not relevant to the atmosphere during the interview. Only Agent Holden and AUSA Rosa were present at the interview, and neither restricted Detloff's movement or his freedom to end the interview. The interview took place in Detloff's office, a location of his choosing, and there is no evidence that strong-arm tactics or stratagems were employed. The atmosphere was not police-dominated and this factor weighs against a finding that Detloff was in custody.

### 6. Arrest

Detloff was not arrested at any point during the June 10, 2015, questioning or subsequent search of DMAM's facility. (Tr. at 31.) Detloff concedes as much in his objections. (Docket No. 78 at 14.) This factor weighs against a finding of custody.

### 7. Conclusion

Detloff's objections to the R&R are largely based on the actions of police during the execution of the search warrant and not what occurred during questioning. It is

undisputed that Detloff agreed to questioning, suggested a location for questioning, was calm and cooperative throughout the interview, and was never placed under arrest. The Griffin factors demonstrate that Detloff was not in custody during questioning, and no Miranda warning was required. Detloff's Motion to Suppress Statements (Docket No. 43) is denied.

**B.     Search Warrants**

Defendants challenge the validity of the search warrants issued for the search of the Detloff residence, Detloff's "Gmail" account, and DMAM's facility, and object to the R&R's conclusion that the search warrants were supported by probable cause. Defendants have not raised specific objections to the R&R's conclusion, but rather rely on "earlier-filed motion[s] and testimony before the Court." (Docket No. 78 at 20.)

"The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995)). The issuing Magistrate Judge's determination of probable cause is given "great deference." United States v. Leon, 468 U.S. 897, 914 (1984) (citation omitted).

Defendants' earlier-filed motions fail to raise any specific deficiencies in the warrants, but rather generally allege that the warrants lack probable cause. Defendants have similarly failed to point to any specific shortcomings in the affidavits in support of each warrant. After review of each warrant and affidavit (Gov't Exs. 6, 7, 8), the Court is satisfied that each included ample factual and background information to establish a fair

probability that evidence would be found in each location. This conclusion is further supported by the R&R's extensive analysis, which need not be repeated here. The search warrants were supported by probable cause, and Defendants' objections are overruled.

**C.     Trash Search**

Agent Holden searched Detloff's trash on May 18, 2015, as part of his investigation. Defendants argue that Detloff retained a reasonable expectation of privacy in his trash due to its location on Detloff's property. Specifically, Defendants contend that the R&R improperly relied on California v. Greenwood, 486 U.S. 35 (1988) to determine that the search was permissible. According to Defendants, the Government has not established that the search was proper because Agent Holden remembers little of the event.

"A warrantless search of an individual's trash violates the Fourth Amendment only where the individual has a 'subjective expectation of privacy in [the] garbage that society accepts as objectively reasonable.'" United States v. Thompson, 881 F.3d 629, 632 (8th Cir. 2018) (quoting Greenwood, 486 U.S. at 39). There is no reasonable "expectation of privacy in trash left for collection in an area accessible to the public." Greenwood, 486 U.S. at 41.

Defendants' suggestion that Greenwood has been superseded by decisions in Florida v. Jardines, 569 U.S. 1 (2013), and United States v. Jones, 565 U.S. 400 (2012), is inaccurate. Neither of those cases overturned Greenwood, and neither address trash searches. As recently as 2018, the Eighth Circuit relied on Greenwood as the authority for trash searches. Thompson, 881 F.3d at 632.

Defendants also contend that because Agent Holden could not recall on which side of the driveway the trash cans were located, whether the lids were open or closed, whether they were full or empty, what color they were, or how many there were, the Government has not established that the search was proper. (Docket No. 79 at 2, 4.) However, these facts are irrelevant to Detloff's expectation of privacy. What is relevant is whether the trash was left for collection in an area accessible to the public. Agent Holden testified that Detloff's trash cans were at the curb when he searched them. (Tr. at 35.) There is no reasonable expectation of privacy in trash left out on the curb for a trash-collection service. Greenwood, 486 U.S. at 41-42. The search of Detloff's garbage did not violate his constitutional rights.

**D.    Storage Area Search**

Finally, Defendants challenge the consensual search of a storage area in DMAM's facility. Defendants claim that Detloff was subjected to duress or coercion, and therefore his consent to search the storage area was not truly voluntary.

"A warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." United States v. Brown, 763 F.2d 984, 987 (8th Cir. 1985). Whether "consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

FBI agents asked Detloff for permission to search the storage facility and he signed a "consent to search" form. (Tr. at 71; Gov't Ex. 5.) Defendants merely rely on their earlier arguments regarding statement suppression to support the notion that

9

Detloff's consent was not voluntary. (See Docket No. 78 at 20; Docket No. 79 at 9.) However, there is no evidence that Detloff was subject to coercion or duress. While Detloff was accompanied by an agent during the search of DMAM's facility, he was still free to move about the building as he pleased and was free to leave if he wished. (Tr. at 64.) Detloff's demeanor was calm and businesslike. (Id. at 28.) Defendants have offered no evidence that Detloff was under coercion or duress when he signed the consent form. This search did not violate Detloff's constitutional rights.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The R&R (Docket No. 77) is **ADOPTED**;

2. Defendant Jeffery Detloff's Motion to Suppress Search and Seizure Evidence (Docket No. 42) is **DENIED**;

3. Detloff's Motion to Suppress Statements (Docket No. 43) is **DENIED**; and

4. Defendant Detloff Marketing and Asset Management's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Docket No. 54) is **DENIED**.

Dated: June 18, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge